UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA EX REL BARBARA
LOPEZ,

                                        Civil Action No. 1:16-cv-1338
            Plaintiff-Relator,          Jury Trial Demanded

    -against-                           COMPLAINT          (DNH/DJS)

NASSAU PHARMACY, INC., AND CATHY        FILED UNDER SEAL
GROSSMAN,

            Defendants.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

NOV 0 8 2016

LAWRENCE K. BAERMAN, CLERK
ALBANY

Plaintiff-Relator Barbara Lopez, by and through her attorneys, O'Connell & Aronowitz,

P.C., brings this action and alleges for her complaint on behalf of the United States of America

against the above captioned Defendants as follows:

## INTRODUCTION

1. This is a *qui tam* action to recover treble damages and civil penalties under the federal

   False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and the New York State False

   Claims Act ("NY FCA"), NY State Finance Law §§ 189 *et seq.*, arising from the false

   and/or fraudulent records, statements and claims made, used and caused to be made, used

   or presented by, Defendant Nassau Pharmacy, Inc., Defendant Cathy Grossman, and/or

   their agents and/or employees, to Medicare and Medicaid for funds in excess of amounts

   to which Defendants were lawfully entitled.

2. Defendant Nassau Pharmacy, Inc. is a pharmacy that dispenses drugs, through its owner,

   and Chief Executive Officer, Defendant Cathy Grossman, and its employees and agents,

   to patients, including patients who have health insurance provided by Medicare Part D

   and the New York State Medicaid program.

3. Many of the prescriptions submitted by Defendant Nassau Pharmacy, Inc. and Defendant Cathy Grossman ("Defendants") for reimbursement by Medicare and Medicaid from approximately July 2014 to present were for drugs that were not dispensed, were not picked up by customers but still billed to their insurance, were billed as a brand name drug but the patient was provided with a generic drug, or resulted in prescription drug shorting such that Medicare and Medicaid were billed for a quantity of pills even though fewer pills were provided to the patient. Defendants also engaged in "bait and switch pricing" by increasing co-payments charged to the patient at the point of sale.

4. Defendants have violated 31 USC 3729(a)(1)(A), (B) and (G) of the False Claims Act in that they have "knowingly present[ed], or cause[ed]s to be presented, a false or fraudulent claim for payment or approval; [or] knowingly [made], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim to the United States Government; [or] knowingly conceal[ed] or knowingly and improperly avoid[ed]s or decrease[d]s an obligation to pay or transmit money or property to the United States Government."

5. Defendants have violated New York State Finance Law §189(1)(a),(b), and (h) in that they have "knowingly present[ed], or cause[ed]s to be presented, a false or fraudulent claim for payment or approval; [or] knowingly [made], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim; [or] knowingly conceal[ed] or knowingly and improperly avoid[ed]s or decrease[d]s an obligation to pay or transmit money or property to the State."

## JURISDICTION AND VENUE

6. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the New York State False Claims Act, NY State Finance Law §§ 189 *et seq.*

7. This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 31 U.S.C. § 3732(b) and the New York State False Claims Act.

8. This court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 because Defendants transact business in this jurisdiction and violations of the False Claims Act described herein were carried out in this district.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and under 31 U.S.C. § 3732(a).

## THE PARTIES

10. Plaintiff-Relator Barbara Lopez is a resident of the State of New York and a citizen of the United States. Plaintiff-Relator Lopez is a duly licensed pharmacist under the laws of the State of New York and is employed by Defendant Nassau Pharmacy, Inc. as a staff pharmacist. Plaintiff-Relator Lopez is an "original source" of the information alleged herein and has direct and independent knowledge of Defendants' submission of false claims. Plaintiff-Relator Lopez seeks to recover federal and state funds from Defendants on behalf of the United States of America.

11. Upon information and belief, Defendant Nassau Pharmacy, Inc. is a New York business corporation formed in September 1988, and has its principal place of business registered with the New York Department of State at 1 Albany Avenue, Nassau, New York 12123-3300 (DEA #BN1613416), but is currently doing business at 3541 US Route 20, Nassau, New York 12123.

12. Upon information and belief, Defendant Cathy Grossman is the owner and Chief Executive Officer of Defendant Nassau Pharmacy, Inc., and resides at 15 Pinewood Drive, Guilderland, New York in Albany County.

## FEDERALLY FUNDED HEALTH PROGRAMS

### A. MEDICARE PART D

13. Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, establishes what is commonly known as the Medicare program. The Secretary of the United States Department of Health and Human Services administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS").

14. Part of the Medicare program is the Medicare Part D program which provides enrolled beneficiaries with assistance in paying for outpatient prescription drugs. This outpatient prescription drug benefit was added to Medicare by the Medicare Prescription Drug Improvement and Modernization Act of 2003 ("MMA"), P.L. 108-173 (Dec. 8, 2003), 42 U.S.C. § 1395w-101 *et seq.*, and 42 C.F.R. Part 423 *et seq.* The new Medicare prescription drug benefits program became effective January 1, 2006.   42 U.S.C. § 1395w-101(a)(2).

15. The MMA provides that Medicare beneficiaries entitled to Part A or enrolled in Part B are eligible to be covered for benefits under Part D.

16. Medicare Part D coverage is not provided within the traditional Medicare program but is offered through private companies. Accordingly, CMS contracts with private entities known as Part D Plan Sponsors ("Part D Sponsors") to administer the prescription drug plans.

17. A Part D Sponsor is a private entity that has been certified as meeting the requirements of Part D and has contracted with CMS to provide Part D benefits. 42 U.S.C. § 1395w-151(a)(13) and 14(B); 42 C.F.R. Part 423.

18. As a private entity, a Part D Sponsor contracts with a first tier entity that provides administrative services and contracts with a "downstream entity" such as a pharmacy to provide the ultimate prescription drug service to the beneficiaries.  42 C.F.R. §423.501.

19. CMS pays the Part D Sponsor, under Medicare Part D, advanced monthly capitated payments in accordance with 42 C.F.R. Part 423.  The Part D Sponsor then pays the Part D Plan pharmacies for prescriptions, less the Medicare beneficiary's co-payment.  At the end of the year, CMS also reconciles payment year disbursements with retroactive adjustments and reconciliations.

20. CMS is able to reconcile and determine capitated payments based upon data that CMS requires the Part D Sponsor and all of its contractors and subcontractors to submit to it.

21. A Part D Sponsor has certain obligations, including an obligation to comply with the requirements and standards of Part D and all the terms and conditions of payment. 42 U.S.C. § 1395w-112(b)(1).

22. A Part D Sponsor in contracting with CMS expressly "agrees to comply with Federal laws and regulations designed to prevent fraud, waste, and abuse, including, but not limited to applicable provisions of Federal criminal law [and] the False Claims Act."  42 C.F.R. § 423.505(h).

23. This same obligation extends to Downstream Entities, such as pharmacies including Defendant Nassau Pharmacy, Inc., who are required to "comply with all applicable Federal laws, regulations and CMS instructions." 42 C.F.R. § 423.505(i)(3)(iv).

24. Payment is expressly conditioned upon the Part D Sponsor providing "information to CMS that is necessary to carry out this subpart, or as required by law." 42 C.F.R. § 423.322(a).

25. One of the requirements in the contract between the Part D Sponsor and CMS includes reporting requirements that a drug has been purchased and dispensed through a document called a Prescription Drug Event ("PDE") record, which includes certain data elements. CMS requires this information for use in its risk adjustment calculations. 42 C.F.R. § 423.505(b), 42 C.F.R. § 423.514 and 42 C.F.R. § 423.329(b).

26. The PDE includes 37 separate fields of data, including, but not limited to, information on the service provider of the drugs, the name of the patient, the prescriber identifier of the drug, the pharmacy identifier, the quantity dispensed and days of supply of the drug, the fill number, the dispensing status, and the patient payment amount.

27. As part of the process, the retail pharmacy submits these data elements of the PDE after a Medicare Part D beneficiary requests his or her prescription to be filled. This typically is done via real-time data transmissions between the pharmacy and the first-tier entity and/or Part D Sponsor.

28. After the Part D Sponsor receives the information, it submits a PDE record to CMS.

29. Payments to a Part D Sponsor, and ultimately to the Downstream Entity, are conditioned on the provision of information to CMS that is necessary for CMS to administer the Part D program and make payments for qualified drug coverage. CMS also uses the information in the PDE at the end of the payment year to reconcile its advance payments to the Part D Sponsor with the actual costs the plan sponsor incurred.

30. During the submission of the data, the Part D Sponsor is required to make several material express certifications to CMS regarding its submission of Part D data (the PDEs) used for payment including:

   1. <u>General rule</u>. As a condition for receiving a monthly payment under subpart G of this part (or for fallback entities, payment under subpart Q of this part), the Part D plan sponsor agrees that its chief executive officer (CEO), chief financial officer (CFO), or an individual delegated the authority to sign on behalf of one of these officers, and who reports directly to the officer, must request payment under the contract on a document that certifies (based on best knowledge, information, and belief) the accuracy, completeness, and truthfulness of all data related to payment. The data may include specified enrollment information, claims data, bid submission data, and other data that CMS specifies.

   2. <u>Certification of enrollment and payment information</u>. The CEO, CFO, or an individual delegated the authority to sign on behalf of one of these officers, and who reports directly to the officer, must certify (based on best knowledge, information, and belief) that each enrollee for whom the organization is requesting payment is validly enrolled in a program offered by the organization and the information CMS relies on in determining payment is accurate, complete, and truthful and acknowledge that this information will be used for the purposes of obtaining Federal reimbursement.

   3. <u>Certification of claims data</u>. The CEO, CFO, or an individual delegated with the authority to sign on behalf of one of these officers, and who reports directly to the officer, must certify (based on best knowledge, information, and belief) that the claims data it submits under § 423.329(b)(3) (or for fallback entities, under § 423.871(f)) are accurate, complete, and truthful and acknowledge that the claims data will be used for the purpose of obtaining Federal reimbursement. If the claims data are generated by a related entity, contractor, or *subcontractor* of a Part D plan sponsor, the entity, contractor, or *subcontractor must similarly certify (based on best knowledge, information, and belief) the accuracy, completeness, and truthfulness of the data and acknowledge that the claims data will be used for the purposes of obtaining Federal reimbursement.* See 42 C.F.R. § 423.505(k) (*emphasis added*).

31. Defendant Nassau Pharmacy Inc., as a subcontractor or "downstream entity" for a Part D Sponsor, is required to comply with all applicable federal laws, regulations and CMS

instructions.  42 C.F.R. § 423.505(i)(4)(iv).  This includes the certifications that the Part D Sponsor must certify to CMS as enumerated in paragraph 30 above.

32. Part D Sponsors and subcontractors or downstream entities, such as Defendant Nassau Pharmacy, Inc., who fail to submit the PDE and other required information in accordance with the above certifications to CMS risk having to return the monthly advanced payments to CMS during reconciliation.  *See* 42 C.F.R. § 423.343.

33. Additionally, Part D Sponsors and their subcontractors/downstream entities who submit Part D PDE data to CMS "must certify that the claims data is true and accurate" and it would be a violation of the False Claims Act if falsely certified.  *See* CMS Prescription Drug Benefit Manual, Chapter 9 -- Part D Program to Control Fraud, Waste and Abuse, Section 80.1, p.56, 67; 42 C.F.R. § 423.505(k)(3); 42 C.F.R. § 423.504(i).

34. Upon information and belief, Defendants, as subcontractors to a Part D Plan Sponsor, have made such explicit certifications of PDE data from approximately July 2014 to the present.  Defendants continue to make such certifications on an ongoing basis to the United States Government.

35. CMS also recognizes that the (i) billing for non-existent prescriptions, (ii) billing for prescriptions that are never picked up, (iii) billing for brand name drugs when generic drugs are dispensed, (iv) engaging in bait and switch pricing to increase the cost of the drug to the patient at the point of sale or (v) prescription drug shorting by pharmacies all constitute pharmacy fraud, waste and abuse.  *See* CMS Prescription Drug Benefit Manual, Chapter 9 – Part D Program to Control Fraud, Waste and Abuse, Section 70.1.3, p. 58.

**B.   Medicare Part D Requires Compliance with All State Pharmacy Laws**

36. Part D requirements also require that all covered Part D drugs be dispensed in accordance with State pharmacy laws and regulations. 42 C.F.R. § 423.505(i)(4)(iv); 42 C.F.R. § 423.153(c)(1).

37. New York law requires a pharmacy to sell and dispense controlled substances to only the ultimate user on the receipt of a prescription by an authorized practitioner. NY PHL § 3333; NY Education Law § 6810.  As part of the dispensing, certain information must be affixed by a label on the container including the "name and address of the ultimate user" and "the number of the prescription" on file.  NY PHL § 3333; 8 N.Y.C.R.R. §29.7. The pharmacist is also required to endorse his or her signature for the date of delivery. *Id.* The pharmacy must also obtain the written signature of the ultimate user, or patient.  8 N.Y.C.R.R. §29.7.

38. New York law also requires that the "date of each refilling must be indicated on the original prescription" and a refill cannot be delivered "without the consent of the patient or an individual authorized to consent on the patient's behalf." NY Education Law § 6810.

39. New York regulations also prohibit substituting drugs without authorization. 8 N.Y.C.R.R. §29.7(a)(5)-(6).

40. Failure to adhere to state law requirements are a violation of Medicare Part D requirements and result in false certifications to CMS.

**C.   Medicaid**

41. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1396, *et seq*., establishes Medicaid, a federally assisted grant program for the States. Medicaid enables the States to provide medical assistance to needy individuals, with parameters set by the State. The Medicaid program is funded by both federal and state funds, with federal contribution computed separately for each State.

42. The federal Medicaid statute sets forth minimum requirements for State Medicaid programs to qualify for federal funding.  42 U.S.C. §§ 1396 *et seq*.

43. New York administers its Medicaid program (also known as the Medical Assistance Program) through the New York State Department of Health.

44. In order to be eligible to receive Medicaid funds as a provider in New York State, a provider must enroll in the Medicaid program and be approved.  18 N.Y.C.R.R. §504.2.

45. Enrolled providers of medical services to Medicaid recipients are eligible for payment for covered services to Medicaid recipients. As part of enrollment, Medicaid enrolled providers agree to abide by the rules, regulations, policies and procedures governing claims for payment. 18 N.Y.C.R.R. §504.3.

46. Specifically, under §504.3, enrolled providers are required to do the following in pertinent part…

> (c)  to accept payment from the medical assistance program as payment in full for all care, services and supplies billed under the program, except where specifically provided in law to the contrary;
>
> (e)  to submit claims for payment only for services actually furnished and which were medically necessary or otherwise authorized under the Social Services Law when furnished and which were provided to eligible persons;
>
> (f)  to submit claims on officially authorized claim forms in the manner specified by the department in conformance with the standards and procedures for claims submission;

(h)  that the information provided in relation to any claim for payment shall be true, accurate and complete; and

(i)  to comply with the rules, regulations and official directives of the department. 18 NYCRR § 504.3.

## GENERAL ALLEGATIONS

47. This action is not based upon any public disclosure of information within the meaning of

    31 USC § 3730(e)(4)(A). Plaintiff-Relator Lopez has direct and independent knowledge

    of the information upon which this Complaint is based within the meaning of 31 USC

    § 3730(e)(4)(B), derived through her employment by Defendants. Plaintiff-Relator Lopez

    has voluntarily provided this information to the United States Government in a disclosure

    statement prior to filing this Complaint.  To the extent that any of these allegations may

    have been publicly disclosed within the meaning of 31 USC § 3730(e)(4)(A), Plaintiff-

    Relator Lopez was the original source of the disclosures.

48. Defendants have knowingly submitted, or so caused to be submitted, on an ongoing basis,

    false statements to the United States Government and New York State for the purpose of

    obtaining federal funds to which they were not entitled.

49. Defendants' conduct in regard to the submission of false claims for payment or approval

    to the United States Government and New York State was knowing and material within

    the meaning of 31 USC § 3729(b) and NY State Finance Law § 188(3).

50. Defendants have damaged the United States Government and New York State in an

    amount to be determined at trial.

## FACTUAL FRAUD ALLEGATIONS

A. **Submission of False Claims to the Medicare Program**

51. Starting in approximately July 2014 and continuing to present, Defendant Nassau Pharmacy, Inc. and Defendant Cathy Grossman knowingly made, or caused to be made, false or fraudulent claims that were submitted to CMS for payment under the Medicare Part D program by, among other things, submitting inaccurate PDEs when (1) submitting claims for drugs that were not picked up by the patient or were not asked to be refilled; (2) billing for brand name drugs when generic drugs were dispensed; (3) billing for a full payment when only a partial amount was dispensed without knowledge by the patient; and (4) increasing co-payment amounts without the patient's knowledge and without any lawful basis.

52. Defendants knowingly caused Part D Sponsors to submit false certifications to Medicare that were material to the payment of claims.

53. Upon information and belief, from approximately July 2014 to present, Defendants caused false or fraudulent claims to be submitted on numerous occasions where drugs were not actually dispensed but billed as dispensed to the patient.

54. Upon information and belief, from approximately July 2014 to present, Defendants caused the submission of false or fraudulent claims by billing for brand name drugs when generic drugs were dispensed.

55. Upon information and belief, from approximately July 2014 to present, Defendants caused false or fraudulent claims to be submitted on numerous occasions where Defendants engaged in prescription drug shorting by billing for a full payment when only a partial amount of the drug was dispensed without the knowledge of the patient.

56. Upon information and belief, from approximately July 2014 to present, Defendants caused false or fraudulent claims to be submitted on numerous occasions by submitting a claim that reflected the true co-payment amount but increasing the co-payment amount charged to the patient, without the patient's knowledge and without any lawful basis.

57. The PDE data falsely submitted by Defendants, together with other information required by CMS, was an express condition of payment for Part D by CMS.  Upon information and belief, each false and/or fraudulent Part D PDE claim submitted by Defendants contained the express certification to CMS and the Part D Sponsor of the "accuracy, completeness and truthfulness of that data" with an acknowledgement that "the data will be used for purposes of obtaining Federal reimbursement."

58. By virtue of these claims, Defendant has received overpayments, and due to Defendant's knowing conduct, CMS has made payments which take into account these false or fraudulent Part D claims and their related costs.

### 1.  First Example of False Claim Submitted

59. On May 6, 2016, Defendant Cathy Grossman filled a prescription for Desonide for patient P.S. but did not dispense it to the patient.

60. Defendant Cathy Grossman forged the patient's signature on the logs kept by Defendant pharmacy to make it appear that the prescription for Desonide was picked up by patient P.S.

61. Defendant Nassau Pharmacy, Inc. submitted a request for payment to the Part D Sponsor for patient P.S. and received payment for Desonide, a prescription drug that was never dispensed.

### 2.  Second Example of False Claim Submitted

62. On June 29, 2016, Defendant Cathy Grossman filled a prescription for patient N.R. for Trintellix.

63. The drug Trintellix was never dispensed to patient N.R.

64. Trintellix is not a common drug that is routinely stocked at Defendant Nassau Pharmacy, Inc.

65. Despite not being provided to patient N.R., a claim for the drug Trintellix was submitted by Defendants on N.R.'s behalf to the Part D Sponsor under Medicare Part D.

66. On July 8, 2016, the drug Trintellix was returned to the wholesaler Kinray.

67. Defendants received payment of $175.31 for the drug Trintellix that was never dispensed to the patient.

### 3. Third Example of False Claim Submitted

68. On February 6, 2016, a prescription for patient R.P. was filled for Uloric 40 MG Tab but the drug was never dispensed to patient R.P..

69. Defendants submitted a bill for Uloric 40 MG Tab to the Part D Sponsor under Medicare Part D for patient R.P. on February 6, 2016.

70. On February 6, 2016, Plaintiff-Relator Lopez reversed the claim when she learned that the patient's physician had taken patient R.P. off the drug.

71. However, on February 9, 2016, Defendant Cathy Grossman rebilled the Part D Plan for the drug even though it was never dispensed and received payment of $732.18.

### 4. Fourth Example of False Claim Submitted

72. On December 12, 2015, a prescription for H.B. was filled by Defendants for Nexium DR 40 MG capsules but was not dispensed to the patient.

73. Defendant Nassau Pharmacy, Inc. submitted a bill for the price of the brand name of Nexium DR 40 MG capsules to the Part D Sponsor for patient H.B..

74. Patient H.B. called the pharmacy to ask why her insurance was billed for a prescription she never picked up.

75. Defendants did not reverse the claim and received a payment for the prescription that was never dispensed.

**5. Fifth Example of False Claim Submitted**

76. On July 7, 2016, a prescription for patient W.M. was filled for Omeprazole DR 20 MG Capsules.

77. The copay amount submitted under the PDE reflects a co-payment of $5.95 to be paid by the patient.

78. However, Defendant Cathy Grossman increased the co-pay to $10.00 and charged the patient W.M. a co-payment of $10.00 without any lawful basis and without his knowledge that the co-payment under Medicare Part D was supposed to be $5.95.

79. Patient W.M. paid the inflated $10 co-payment.

**6. Sixth Example of False Claim Submitted**

80. On August 1, 2016, a prescription for Nexium DR 40 MG capsule was submitted for patient A.S. to Defendant Nassau Pharmacy, Inc.

81. Defendant Nassau Pharmacy, Inc. filled the prescription with a generic version of the drug Nexium DR 40 MG capsule and dispensed to patient A.S..

82. Defendant Nassau Pharmacy, Inc. submitted a bill to Medicare Part D for the brand name version of the drug Nexium DR 40 MG in the amount of $764.33.

83. Defendant Nassau Pharmacy, Inc. received payment for the brand name drug when the generic drug was dispensed to patient A.S.

### 7.  Seventh Example of False Claim Submitted

84. On October 10, 2016, a prescription for Lantus Solostar 100 units, for a quantity of sixty (60), was submitted for patient R.N.

85. A quantity of sixty (60) of Lantus Solostar comes in four boxes because each box contains a quantity of 15.

86. Defendant Nassau Pharmacy, Inc. provided patient R.N. with only two boxes, which is equivalent to a quantity of thirty (30).

87. Defendant Nassau Pharmacy, Inc. submitted a bill to Medicare Part D for a quantity of sixty (60) for Lantus Solostar in the amount of $1,414.70.

88. Defendant Nassau Pharmacy, Inc. received payment for a quantity of sixty (60) in the amount of $1,414.70 when it provided a quantity of thirty (30) to patient R.N..

## B.  Submission of False Claims to the Medicaid Program

89. Starting in approximately July 2014 and continuing to present, Defendants knowingly made, or caused to be made, false or fraudulent claims that were submitted to the New York State Medicaid program for payment by, among other things, submitting false records including (1) submitting claims for drugs that were not picked up by the patient and/or were billed as a refill and not picked up or requested by the patient; (2) billing for brand name drugs when generic drugs were dispensed; (3) billing for a full payment when only a partial amount of the drug was dispensed without the knowledge of the patient; and (5)  increasing co-payment amounts without the patient's knowledge or any lawful basis.

90. Upon information and belief, Defendants knowingly submitted false certifications to Medicaid that were material to the payment of claims.

91. Upon information and belief, from approximately July 2014 to present, Defendants caused false or fraudulent claims to be submitted on numerous occasions where prescription drugs were not dispensed but billed as dispensed to the patient.

92. Upon information and belief, from approximately July 2014 to present, Defendants caused false or fraudulent claims to be submitted when they engaged in prescription drug shorting by billing for a full payment when only a partial amount of the drug was dispensed without the knowledge of the patient.

93. Upon information and belief, from approximately July 2014 to present, Defendants caused false or fraudulent claims to be submitted when they submitted claims that reflected the true co-payment amount but increasing the co-payment amount charged to the patients.

94. By virtue of these claims, Defendants have failed to comply with the rules and regulations regarding payment by Medicaid and have received overpayments based upon this knowing conduct. Due to Defendants' knowing conduct, New York State Medicaid has made payments which take into account these false or fraudulent claims and their related costs.

   **1. First Example of False Claim Submitted**

95. On December 26, 2015, Defendant Cathy Grossman filled a prescription for Mupirocin 2% ointment for patient A.M.

96. Patient A.M. never received the prescription for Mupirocin 2% ointment.

97. Defendants submitted a request for payment to Medicaid for Mupirocin 2% ointment for patient A.M. and received payment of $9.00 for a prescription that was never dispensed.

98. Plaintiff-Relator Lopez reversed the claim on February 6, 2016 after Plaintiff-Relator Lopez realized that patient A.M. had not picked up or received the prescription for Mupirocin 2% ointment.

99. Defendant Cathy Grossman rebilled this claim and received the $9.00 payment by Medicaid on February 9, 2016.

100.     Defendant Cathy Grossman then forged the patient's signature on the logs kept by Defendant Nassau Pharmacy, Inc. to make it appear that the prescription was picked up by patient A.M.

### 2. Second Example of False Claim Submitted

101.     On July 19, 2016, a prescription for CREON DR 24000 CAPS for a quantity of 1500 capsules was requested to be filled by Defendants for patient B.T..

102.     CREON DR 24000 CAPS is not a common drug that is routinely stocked at Defendant Nassau Pharmacy, Inc.

103.     Accordingly, on August 2, 2016, Defendants ordered only 500 capsules from Abbott Laboratories to fulfill this order.

104.     Despite the physician ordering a quantity of 1500 capsules of CREON DR 24000 to be dispensed to patient B.T. and the labeling reflecting that 1500 capsules were dispensed, patient B.T. was only provided 500 capsules on September 12, 2016 when the prescription was only partially filled.

105.     Defendants billed Medicaid for the full prescription of 1500 capsules of CREON DR 24000 CAPS and received a payment of $7,789.92 despite providing the patient, B.T., only one-third of the capsules prescribed.

### 3.  Third Example of a False Claim Submitted

106.     On October 20, 2015, a prescription for patient B.T. was filled for CREON DR 24000 CER but was not dispensed to patient B.T.

107.     Defendants submitted a bill to Medicaid for patient B.T. on October 20, 2015.

108.     On October 22, 2015, Plaintiff-Relator Lopez reversed the claim as it was not dispensed to the patient.

109.     On December 12, 2015, Defendant Cathy Grossman rebilled Medicaid for the prescription for CREON DR 24000 CER even though patient B.T. had not received the prescription medication.

110.     On December 16, 2015, Plaintiff-Relator Lopez reversed the claim as patient B.T. had not received the medication.

111.     On December 26, 2015, Defendant Cathy Grossman again rebilled Medicaid for the prescription even though patient B.T. still had not received the prescription medication.

112.     On January 18, 2016, Plaintiff-Relator Lopez reversed the claim as patient B.T. still had not received the medication.

113.     On January 20, 2016, Defendant Cathy Grossman again rebilled Medicaid for the prescription for CREON DR 24000 CER even though patient B.T. still had not received the prescription medication. Defendants received payment of $3,832.87 for this prescription from Medicaid.

### 4. Fourth Example of a False Claim Submitted

114.     On September 8, 2016, a prescription for patient J.S. was filled for Tramadol HCL 50 MG Tablet.

115.     The co-payment amount submitted reflects a co-payment of $0.33 to be paid by the patient.

116.     However, Defendant Cathy Grossman increased the co-payment to $3.47 without any lawful basis and charged the patient J.S. a co-payment of $3.47 without his knowledge that the co-payment had been increased.

### 5. Fifth Example of a False Claim Submitted

117.     On July 25, 2016, a prescription for patient C.N. was filled for Adderall XR 3O MG CER for a quantity of thirty (30).

118.     The brand version of Adderall XR 3 OMG CER was not stocked by Defendants and had not been ordered in 2015 or 2016 by Defendants.

119.     Defendant Nassau Pharmacy, Inc. filled the prescription with a generic version of the drug and dispensed the generic version to patient C.N.

120.     Defendant Nassau Pharmacy submitted a bill to Medicaid for the brand name version of the drug Adderall XR 30 MG CER in the amount of $216.33.

121.     Defendant Nassau Pharmacy received payment for the brand name drug when the generic drug was dispensed to patient C.N.

## COUNT I

### Violations of the Federal False Claims Act

### 31 U.S.C. § 3729(a)(1)(A)

122.     Plaintiff-Relator repeats and realleges the allegations contained in paragraphs 1 through 121 of this Complaint.

123. This is a claim for treble damages and penalties under the federal False Claims Act, 31 U.S.C. §3729 *et seq.*

124. Upon information and belief, as a prerequisite to participating in federally-funded health care programs, including Medicare Part D and Medicaid, Defendants expressly certified their compliance with applicable statues and regulations.

125. At all times relevant, Defendants acted knowingly as that term is defined in the federal False Claims Act, 31 U.S.C. § 3729(b)(1), in that the Defendants acted with actual knowledge, or in deliberate disregard of the truth or falsity of the information, or in reckless disregard of the truth or falsity of the information provided in support of the Part D drug claims and payments.

126. Upon information and belief, Defendants submitted requests for payment to Part D Plan Sponsors for drugs that were not dispensed, not picked up or were only partially dispensed but fully charged (i.e., engaged in prescription drug shorting), did not reflect the true co-payments paid by the patient, and also submitted requests for payment for brand name drugs when generic drugs were dispensed. As a result, Defendants knowingly caused the Part D Sponsor to submit false or fraudulent claims for payment to CMS for drugs that were ineligible for payment under the Part D program.

127. Defendant Nassau Pharmacy, Inc. and Defendant Cathy Grossman knowingly submitted false information to Part D Sponsors regarding the drugs and caused the Part D Sponsor to submit false certifications that were material to payment of the claims.

128. By not delivering the "dispensed" drugs to the patients who were prescribed them, engaging in prescription drug shorting, or by providing generic drugs when brand name drugs were ordered and billed, and requesting payment for them, Defendants failed to

comply with New York State laws governing pharmacies. Due to this unlawful conduct, Defendants have falsely certified compliance with the Part D regulations and requirements.

129.     Defendants' unlawful practices caused false claims for Medicare Part D benefits to be ultimately submitted to CMS which affected both the benefits of the individual Part D member-patients and the payments made by CMS and the Part D Sponsor to Defendants.

130.     Defendants also submitted requests for payment to Medicaid for drugs that were not dispensed or received by patients, were partially dispensed but fully charged (i.e. engaged in prescription drug shorting) or billed for brand name drugs when generic drugs were dispensed.

131.     When Defendants submitted requests for payment to Medicaid and received such payments, Defendants also failed to comply with the rules and regulations of New York State governing payment under Medicaid.

132.     By virtue of the acts described above, Defendants knowingly made claims, or caused claims to be made, that were false or fraudulent, to the United States Government for payment or approval under both the Medicare Part D and Medicaid programs.

133.     By reason of the foregoing, the United States Government has suffered actual damages and substantial monetary damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT II

### Violations of the Federal False Claims Act

### 31 U.S.C. § 3729(a)(1)(B)

134.     Plaintiff-Relator repeats and realleges the allegations contained in paragraphs 1 through 121, 123 to 133 of this Complaint.

135.     The Defendants knowingly made, used, or caused to be made or used, false records and statements, including the false certifications and representations of compliance with state and Federal statutes and regulations for Medicare Part D and Medicaid, all of which were material to the claim for payment, and violations of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

136.     By reason of the foregoing, the United States Government has suffered actual damages and substantial monetary damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT III
### Violations of the Federal False Claims Act
### 31 U.S.C. § 3729(a)(1)(G)

137.     Plaintiff-Relator repeats and realleges the allegations contained in paragraphs 1 through 121, 123 to 133 and 135 to 136 of this Complaint.

138.     Defendants submitted or caused the submission of false PDE data and/or false records or statements of certifications and representations of compliance.

139.     Given this conduct, and the knowing concealment by Defendants to the Part D Sponsor, Defendants are in receipt of overpayments that have not been returned during the Part D annual reconciliation process.

140.     Defendants also submitted or caused the submission of false records or statements to Medicaid and are in receipt of overpayments from the New York State Medicaid program.

141.    As a result of Defendants' conduct and failure to provide truthful and accurate information, Defendants submitted false claims in order to avoid returning overpayments to Medicare and Medicaid.

142.    Defendants knowingly caused to be made or used false or fraudulent records or statements, i.e. the false certifications, that were submitted to conceal, avoid or decrease an obligation to pay or transmit money or property to the United States, in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

143.    By reason of the foregoing, the United States Government has suffered actual damages and substantial monetary damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT IV
### Violations of the New York State False Claims Act
### NY State Finance Law § 189(a)

144.    Plaintiff-Relator repeats and realleges the allegations contained in paragraphs 1 through 121, 123 to 133, 135 to 136 and 138 to 143 of this Complaint.

145.    At all times relevant, Defendants acted knowingly as that term is defined in the New York State False Claims Act, NY State Finance Law § 188(3), in that the Defendants acted with actual knowledge, or in deliberate ignorance of the truth or falsity of the information, or in reckless disregard of the truth or falsity of the information provided in support of the Medicaid claims and payments.

146.    Upon information and belief, Defendants submitted requests for payment to Medicaid for drugs that were not dispensed, not picked up or were only partially dispensed but fully charged (i.e., engaged in prescription drug shorting), for payments

that did not reflect the true co-payments paid by the patient, and also submitted requests for payment for brand name drugs when generic drugs were dispensed. As a result, Defendants knowingly caused Medicaid to make improper payments under the Medicaid program to Defendants.

147.    Defendant Nassau Pharmacy, Inc. and Defendant Cathy Grossman knowingly submitted false information and certifications to Medicaid regarding the prescription drugs that were material to the payment of the claims.

148.    By not delivering the "dispensed" drugs to the patients who were prescribed them, engaging in prescription drug shorting, or by providing generic drugs when brand name drugs were ordered and billed, and requesting payment for them, Defendants failed to comply with the regulations governing Medicaid claims in New York State.

149.    By virtue of the acts described above, Defendants knowingly made claims, or caused claims to be made, that were false or fraudulent to the State of New York.

150.    By reason of the foregoing, New York State has suffered actual damages and substantial monetary damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT V

### Violations of the New York State False Claims Act
### NY State Finance Law § 189(b)

151.    Plaintiff-Relator repeats and realleges the allegations contained in paragraphs 1 through 121, 123 to 133, 135 to 136, 138 to 143 and 145 to 150 of this Complaint.

152.    The Defendants knowingly made, used, or caused to be made or used, false records and statements, including the false certifications and representations of

compliance with state statutes and regulations for Medicaid, all of which were material to the claim for payment, and violations of the New York State False Claims Act.

153.     By reason of the foregoing, New York State has suffered actual damages and substantial monetary damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT V

### Violations of the New York State False Claims Act
### NY State Finance Law § 189(h)

154.     Plaintiff-Relator repeats and realleges the allegations contained in paragraphs 1 through 121, 123 to 133, 135 to 136, 138 to 143, 145 to 150 and 152 to 153 of this Complaint.

155.     The Defendants knowingly made, used or caused to be made or used, false records and statements including the false certifications and representations of compliance with state statutes and regulations, all of which were material to the claim for payment and a violation of the New York State False Claims Act.

156.     Given this conduct, and the failure to reverse claims, the knowing concealment by Defendants to the Medicaid program, Defendants are in receipt of overpayments that have not been returned.

157.     As a result of Defendants' conduct and failure to provide truthful and accurate information, Defendants submitted false claims in order to avoid returning overpayments.

158.     Defendants knowingly caused to be made or used false or fraudulent records or statement, i.e. the false certifications, that were submitted to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of New York.

159.     The State of New York has paid Defendants under the Medicaid program because of Defendant's knowingly false conduct.

160.     By reason of the foregoing, New York State has suffered actual damages and substantial monetary damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**WHEREFORE**, Plaintiff-Relator requests the following relief:

A. On Count I, II and III, judgment against Defendants for three times the amount of damages the United States Government has sustained because of the defendants actions, plus a civil penalty for violations occurring after November 2, 2015 of $10,781 to $21,563 or for conduct on or before November 2, 2015 of $5,500 to $10,781 for each violation of the federal False Claims Act;

B. On Count IV, V and VI, judgment against Defendants for treble the State of New York's damages, in an amount to be determined at trial, plus a $12,000 penalty for each false claim;

C. Awarding the Plaintiff-Relator her share pursuant to 31 U.S.C. §3730(d) and NY State Finance Law § 190(6);

D. Awarding the Plaintiff-Relator's Attorney fees, costs and expenses pursuant to 31 U.S.C. § 3730(d) and NY State Finance Law § 190(7); and

E. Awarding such further relief as is proper.

## JURY TRIAL DEMAND

Plaintiff- Relator demands a jury trial for all claims so triable.

Dated: November 8, 2016
   Albany, New York

O'CONNELL & ARONOWITZ, P.C.

By: _____
   David R. Ross, Bar Roll No. 507997

*Attorneys for Plaintiff-Relator*
Office and P.O. Address
54 State Street
Albany, New York 12207
(518) 462-5601
dross@oalaw.com