UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA
and THE STATE OF NEW YORK
ex rel BARBARA LOPEZ,

                            Plaintiff,

          -v-                                                    1:16-CV-1338

NASSAU PHARMACY, INC. and
CATHY GROSSMAN,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

HON. GRANT C. JAQUITH                     ADAM J. KATZ, ESQ.
United States Attorney for the            Ass't United States Attorney
   Northern District of New York
445 Broadway, Room 218
Albany, NY 12207

O'CONNELL, ARONOWITZ LAW FIRM             DAVID ROBERT ROSS, ESQ.
Attorneys for Relator Barbara Lopez       DANIELLE HOLLEY
54 State Street, 9th Floor                   TANGORRE, ESQ.
Albany, NY 12207

DEROHANNESIAN & DEROHANNESIAN             PAUL DEROHANNESIAN, II, ESQ.
Attorneys for Defendants                  DANIELLE R. SMITH, ESQ.
677 Broadway, Suite 707
Albany, NY 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I. INTRODUCTION

On November 8, 2016, relator Barbara Lopez ("Lopez" or "relator") brought this *qui tam* action on behalf of the United States of America and the State of New York against defendants Nassau Pharmacy, Inc. and Cathy Grossman (collectively "defendants") alleging that defendants committed health care claims fraud in violation of the False Claims Act ("FCA") and related state law.

On May 20, 2019, the parties[1] entered into a Settlement Agreement in which defendants agreed to pay $56,297.00 to the United States and $43,703.00 to the State of New York to resolve all of the FCA violations alleged by Lopez.  Dkt. No. 18.  Relator herself received $12,385.34 from the United States and $9,614.88 from the State of New York as a result of this written agreement.  *Id*.  However, the settlement explicitly reserved relator's right to "recover expenses, costs or attorneys' fees" under 31 U.S.C. § 3730(d).  *Id*. ¶ 8.

On May 20, 2020, Lopez moved for fees and costs under Federal Rule of Civil Procedure ("Rule") 54 and 31 U.S.C. § 3730(d), a fee-shifting provision for *qui tam* plaintiffs found in the FCA.  According to plaintiff, an award of reasonable fees and costs is warranted in light of her status as a "prevailing party."  Defendants have opposed plaintiff's request, which has been fully briefed and will be considered on the basis of the submissions without oral argument.

---

[1] Both the United States and the State of New York elected to intervene on June 5, 2019 for the limited purpose of consummating the settlement.  Dkt. Nos. 15, 16.

## II. <u>DISCUSSION</u>[2]

Lopez seeks an award of $64,832.80 in attorneys' fees and costs in the amount of $506.00, plus interest[3] running from the settlement date of May 20, 2019.  Pl.'s Mem., Dkt. No. 21-1, 5.[4]  Relator also seeks an additional $14,300.00 in fees associated with the time spent litigating this contested motion.  *Id*. at 11.

### A. <u>Reasonable Fee for the Litigation</u>

"Under the False Claims Act, a qui tam plaintiff who obtains a settlement with a defendant is entitled to an award of reasonable attorneys' fees and costs."  *United States ex rel. Keshner v. Nursing Personnel Home Care*, 794 F.3d 232 (2d Cir. 2015) (citing 31 U.S.C. § 3730(d)(1)).

"To determine a reasonable amount of attorneys' fees, courts use the lodestar method—the product of a reasonable hourly rate and the hours reasonably spent on the case."  *United States ex rel. Rubar v. Hayner Hoyt Corp.* ("*Rubar*"), 306 F. Supp. 3d 478, 488 (N.D.N.Y. 2018) (Sharpe, J.) (citations omitted); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (observing that the Second Circuit and the Supreme Court have held that the lodestar calculation creates a "presumptively reasonable fee").

---

[2] The relevant factual background is contained in the parties' settlement agreement and will not be repeated here.  Dkt. No. 18 ¶¶ A-F.

[3] Lopez's memorandum does not explain why interest should begin to run from the settlement date rather than the date on which any fee award is reduced to a final judgment.  A review of case law indicates it might be a thorny question.  *See, e.g., Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 2013 WL 527199, at *13 (E.D.N.Y. Feb. 11, 2013).  Because relator does not address the issue, the Court will not award interest from the settlement date.

[4] Pagination corresponds to CM/ECF.

- 3 -

The "reasonable hourly rate" is determined by reference to "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 184 (2d Cir. 2008).  As the Second Circuit has explained, "the reasonable, paying client" is one "who wishes to pay the least amount necessary to litigate the case effectively." *Id*.  To make that determination, the district court should consider a number of factors, including but not limited to:

> the complexity and difficulty of the case, the availability expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.

Going beyond this non-exclusive list of factors, district courts enjoy substantial discretion in determining an appropriate fee award, and "may use estimates based on their overall sense of a suit." *Rubar*, 306 F. Supp. 3d at 489; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.").  Indeed, a district court may even use a "percentage deduction of the requested fees 'as a practical means of trimming fat from a fee application[.]'" *Rubar,* 306 F. Supp. 3d at 489 (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).

Lopez has submitted two declarations and a consolidated timekeeping record in support of her requested fees.  The first declaration belongs to David R. Ross, a senior shareholder in the firm who has been admitted to practice since 1991.  Ross Decl., Dkt. No.

- 4 -

21-2, ¶¶ 1, 13-14.  As Mr. Ross explains, he was the supervising attorney responsible for handling relator's case.  *Id*.

Mr. Ross has requested $37,342.50 in fees, an amount which is broken down into 41.1 hours at $475 per hour and 36 hours at $495 per hour.  Ross Decl. ¶ 8.  According to his declaration, Mr. Ross has substantial experience handling false claims cases, and he previously served in various roles in New York State government that involved investigation into health care fraud, waste, and abuse.  *Id*. ¶¶ 12-13.

The second declaration belongs to Danielle H. Tangorre, a shareholder in the firm who has been admitted to practice for nine years.  Tangorre Decl., Dkt. No. 21-7, ¶¶ 1, 5; *see also* Defs.' Mem., Dkt. No. 25-1 at 6 n.2.  As Ms. Tangorre explains, she was the junior attorney involved in litigating Lopez's case.[5]  Tangorre Decl. ¶¶ 1, 5.

Ms. Tangorre has requested $24,015.00 in fees, an amount which is broken down into 55.7 hours at $300 per hour, 21 hours at $325 per hour, and 1.2 hours at $400 per hour.  Tangorre Decl. ¶ 9.  According to her declaration, Ms. Tangorre has worked on a number of *qui tam* matters, including claims involving health care fraud.  *Id*. ¶ 8.

Finally, Lopez seeks payment for "staff/paralegal time" at rates ranging from $80 to $150 per hour.  Pl.'s Mem. at 9.  According to relator's supporting memorandum, these rates fall "within the District's average prevailing rates."  *Id*.  Notably, however, these requests are not mentioned elsewhere in relator's filings.

Defendants object to the reasonableness of the requested fees on a number of grounds.  First, defendants offer several reasons why Lopez's attorneys have failed to justify

---

[5]  Ms. Tangorre appears in the timekeeping records as "Danielle E. Holley."

their requested hourly rates, which they themselves acknowledge to be "at the higher end of the prevailing rates for the Northern District."  Defs.' Mem. at 9.

For instance, defendants argue that relator's attorneys have failed to establish (1) any particularly novel or difficult questions presented by this matter; (2) that either lawyer's level of skill and expertise was necessary for much of the work billed on the file; or (3) that the relatively high hourly rates requested by both attorneys have been awarded in similar cases in this District.  Defs.' Mem. at 9-16.

Second, defendants argue that Lopez's counsel have failed to adduce evidence establishing the reasonableness of the fees requested for 18.0 hours of work, which is billed by eight individuals who have gone mostly unmentioned in either attorney's supporting declaration.  *See* Ex. C to Ross Decl., Dkt. No. 21-5 at pp. 14-15.

As defendants point out, these individuals are identified by name and initials in the billing record and in Mr. Ross's declaration (and many appear to be partners or associates based simply on the stated hourly fees).  Defs.' Mem. at 17.  Even so, the fee application and supporting declarations are completely silent about the credentials or legal experience of these various individuals.  *Id*.

Third, defendants argue that an across-the-board reduction "of at least 15%" should be applied because both Mr. Ross and Ms. Tangorre's timekeeping entries are indicative of the sort of "lump billing" that precludes meaningful judicial review of the reasonableness of the time spent on each individual task.  Defs.' Mem. at 18-20.

Upon review, defendants' objections to the fee request will be sustained in part.  First, defendants are correct to argue that the fee application and two supporting declarations do not include sufficient information to award any fees associated with the 18.0 hours of work

that was not billed to the file by Mr. Ross or Ms. Tangorre.  As mentioned, the Court can

hazard a good guess about the likely identities of these individuals based on their billing

rates.  But that is not how fee applications work.  *Hugee v. Kimso Apartments, LLC*, 852 F.

Supp. 2d 281, 298 (E.D.N.Y. 2012) ("The burden is on the party seeking attorney's fees to

submit sufficient evidence to support the hours worked and the rates claimed.").

Mr. Ross's declaration includes the names and general identities of these individuals,

Ross Decl. ¶ 14, but this information alone is far from sufficient to determine the reasonable

hourly rate that would be appropriate for these employees.  *See Flores v. Mamma*

*Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) (faulting counsel's

failure to provide "adequate biographical information concerning the attorneys for whom

charges were submitted, which is required to evaluate experience levels").

Second, an across-the-board reduction of 10% to the fee award is also appropriate in

light of an independent review of the time records.  *Accord Rubar*, 306 F. Supp. 3d at

489.  Although the timekeeping document is relatively thorough, defendants are correct to

point out several entries that appear to be excessive or otherwise insufficiently detailed to

determine whether the reasonableness of the hours expended.  *See, e.g.*, *Luessenhop v.*

*Clinton County*, 558 F. Supp. 2d 247, 268 (N.D.N.Y. 2008) (Treece, M.J.) ("The consequence

of block billing, inadequate, and ambiguous records is a reduction in the hours and costs.").

Third, a slight reduction in the hourly rates for Mr. Ross and Ms. Tangorre is also

warranted.  As Lopez's own attorneys point out, now-Senior United States District Judge

Gary L. Sharpe recently awarded a rate of $450 per hour for a senior attorney and $400 per

hour for a junior partner in a *qui tam* action brought under the FCA.  *Rubar*, 306 F. Supp. 3d

at 490.  On the other hand, though, defendants correctly note that relator's counsel have not

actually cited a court decision from this District (or any other, for that matter) that has approved an hourly rate of $495 per hour or even $475 per hour in this kind of case, the hourly rates requested by Mr. Ross for at least some of his billed time.  And Ms. Tangorre's request to bill *any* time at $400 per hour appears unreasonable under the circumstances. *See, e.g.*, *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005) (holding that court may rely on "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district").  Accordingly, the reasonably hourly rate for Mr. Ross is $450 per hour, and Ms. Tangorre's rate will be capped at $300.  *See Rubar*, 306 F. Supp. 3d at 490.

However, any further reduction in hourly rates or hours expended would be unwarranted.  Although the FCA itself may be a relatively straightforward fraud statute, arcane procedural requirements, like the first-to-file rule, and other potential roadblocks, like the public disclosure bar, add a level of complexity that is somewhat unique to this kind of litigation.  Contrary to defendants' contention, a review of the time records indicates that Mr. Ross, as supervising attorney, and Ms. Tangorre, as the more junior attorney on the file, divided the work relatively evenly between them and achieved a substantial result for their client.  *See, e.g.*, *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 192 (E.D.N.Y. 2014) ("[T]here is no requirement that the amount of an award of attorneys' fees be *proportional* to the amount of damages.").

In sum, the appropriate fee is as follows:  $34,695.00 for Mr. Ross (77.1 hours at $450 per hour) and $23,370.00 for Ms. Tangorre (77.9 hours at $300 per hour).  When this sub-total ($58,065) is reduced by 10%, the final award comes to $52,258.50.

**B.  <u>Reasonable Fee for this Motion</u>**

Lopez seeks an additional $14,300 in attorneys' fees associated with litigating this motion.  Pl.'s Mem. at 11.  According to relator's counsel, various attorneys expended 48.9 hours preparing the fee application in this case.  Ex. D to Ross Decl., Dkt. No. 21-6.

Generally speaking, the prevailing party has the "right to bill for time spent applying for fees and costs."  *Murray ex rel. Murray v. Mills*, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (applying rule to § 1983 litigation).  Defendants appear to concede that an award of additional fees for preparing the application is warranted in this case but contend that the time spent on the motion is excessive.  Defs.' Mem. at 20-22.

Upon review, it is appropriate to make substantially the same adjustments to this component of the award as were made to the litigation fee itself.  In other words, time billed by individuals not reasonably described in the declarations or other supporting materials must be discounted, and Mr. Ross and Ms. Tangorre's hourly rates must be adjusted to reflect the prevailing rates in the Northern District of New York.

Applied here, the appropriate award is $2,475.00 for Ross (5.5 hours at $450 per hour) and $3,840.00 for Tangorre (12.8 hours at $300 per hour).  Notably, these figures (18.3 hours of work for a total fee of $6,315.00) amount to roughly 11% of the total hours expended by relator's counsel in connection with this matter, and are eminently reasonable under the circumstances.  *Luessenhop*, 558 F. Supp. 2d at 271 (reducing number of hours allowed in prevailing party's fee application by roughly 50%); *see also Murray*, 354 F. Supp. 2d at 241 (observing that even in a complex case litigated to trial the time spent on a fee application should not reasonably exceed 30 hours).  Accordingly, a total fee of $6,315.00 is appropriate.

## V. **CONCLUSION**

Lopez's request for attorneys' fees is granted subject to the modifications necessary to produce a reasonable fee award.  And because defendants do not object to the $506.00 sought in costs, those too will be awarded.  Defs.' Mem. at 8.

Therefore, it is

ORDERED that

1.  Lopez's motion for attorneys' fees and costs is GRANTED;

2.  Lopez's counsel is awarded a total fee of $58,573.50; and

3.  Lopez is awarded costs in the amount of $506.00.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  July 1, 2020
        Utica, New York.